IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| ROMARE J. GREEN, )<br>)<br>　　Plaintiff, )<br>)<br>v. )<br>)<br>COSCO SHIPPING LINES CO. LTD., )<br>COSCO SHIPPING CAMELLIA )<br>LIMITED, AND SHANGHAI OCEAN )<br>SHIPPING CO. LTD., )<br>)<br>　　Defendants. ) | Case No. 4:20-cv-00091-WTM-CLR |

### DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Defendants COSCO Shipping Lines Co. Ltd., COSCO Shipping Camellia Limited, and Shanghai Ocean Shipping Co. Ltd. ("Defendants") move the Court for a protective order to for two forms of relief: (1) to prevent Plaintiff Romare J. Green from taking five noticed depositions and (2) to prohibit his counsel from engaging in inappropriate and abusive deposition conduct. Plaintiff has unnecessarily injected irrelevant and insulting commentary on Defendants' witnesses' cultural background and integrity. Compounding this improper focus, Plaintiff clearly improperly intends to turn this case into a referendum on Sino-American relations and the degree to which the Defendants "care" about the Plaintiff's injuries. Accordingly, Defendants now move the Court to prevent both Plaintiff's efforts to obtain procedurally unjustified, irrelevant discovery and his counsel's abuse of the discovery process.

I.　　BACKGROUND

This negligence case arises out of an injury allegedly sustained by Plaintiff while he was working as a longshoreman aboard the M/V COSCO SHIPPING CAMELLIA ("the vessel") on February 17, 2020. Plaintiff alleges that as he reached the bottom of a gangway, the left handrail

1

collapsed, causing him to fall onto the dock. None of the ship's crew witnessed the incident. *See* Doc. 37-2 at 4-5.

The genesis of this motion is Plaintiff's noticing six depositions of crew members of the vessel at the time Plaintiff fell. On June 6, 2020, Plaintiff noticed the depositions Captain Zhu Qiuwen, Chief Officer Liu Jinlong, Second Officer Li Guowei, Second Officer Kai Gao, Third Officer Ni Changfei, and Chief Engineer Wang Yongliang, but offered to narrow this list to crew members responsible for proper operation of the gangway on the day of the incident. *See* June 6 Letter from Brent Savage to Jason Pedigo (Exh. A). Defendants determined that the chief officer responsible for the ship during cargo operations at the time of Plaintiff's injury was still aboard the vessel and that Able Seaman ("AB") Li Jinzhao ("Li"), who initially rigged the gangway on the day the incident, was also still aboard. On July 29, 2020, Defendants identified these two individuals to Plaintiff and offered to make them available for deposition during the ship's call upon the Port of Savannah on August 3. *See* July 30, 2020 Email String Between Cathy Otto and Jason Pedigo (Exh. B). Plaintiff served an amended deposition notice providing that the same[1] previously scheduled depositions would be videotaped. He also indicated that he still intended to take the depositions of all the noticed witnesses, including those with no knowledge of the incident or role in rigging the gangway. Defendants made it clear that these other witnesses had no personal knowledge regarding the incident and would be working while the vessel was in port

---

[1] In their motion to compel, Plaintiff strangely takes the position that he noticed seven depositions, not six. *See* Doc. 24 at 1-2. In support of this assertion, he attaches a deposition notice he represents to be the "final notice." *Id.; see also* Doc. 24-1. Plaintiff must be mistaken, however, as he never served a notice in this form. Attached hereto as Exhibit C is a copy of the amended notice Defendants received from Plaintiff. Plaintiff's version appears to have added AB Li as an additional deponent. That he was added after the fact appears to be confirmed by the certificate of service attached to Plaintiff's exhibit, which fails to list AB Li. *See* Doc. 24-1 at 3. Whatever the reason for the discrepancy, it is ultimately not germane to the resolution of either this or Plaintiff's motion. Even though AB Li's deposition was never noticed, the Defendants made him available anyway, and the Plaintiff deposed him.

2

(and was scheduled to be so for only 24 hours).  *See id*.  The next day, Plaintiff stated that he required Defendants to admit liability before he would commit to taking the depositions only of the crew with relevant knowledge.  He additionally suggested the possibility of deposing other crewmembers upon the vessel's return to savannah.  *See id*.  Defendants further explored that possibility, but Plaintiff ultimately decided that all of the depositions were to go forward on the same day.  Defendants agreed only to make available AB Li, who installed and was stationed at the gangway when the handrail collapsed, and Chief Officer Liu who had no personal knowledge of the incident but did oversee cargo operations.

On August 3, 2020, Defendants filed their Notice of Request for an Informal Discovery Dispute Conference.  Two days later on August 5, 2020, Plaintiff took the deposition of the two witnesses Defendants made available.  Important to this motion, Plaintiff's questioning repeatedly ventured into abusive, improper territory, expanding the scope of the issues to be addressed in the dispute between the parties.

The chief officer's deposition was first.  During that deposition, Plaintiff's counsel repeatedly asked questions demeaning the Chinese and thus the witness for his national origin:

> Q.   All right.  Is that a concept in China that you're familiar with, where you kinda con people into thinking you care, and you really don't?
> MR. PEDIGO:  Brent, let me object.  I don't think it's appropriate to ask questions that malign a country or a group of people, and --
> MR. SAVAGE:  How's it not appropriate?  The president of the United States who appointed this federal judge does it every day.  Calls it the Wu flu.  I mean, I'm not getting into that level.
> I think this is a mock empathy and I want to -- we'll explore it more.  Do you want him not to answer the question?

Depo. of Liu Jinlong (Exh. D) at 14-15.

> Q.   All right, now, you're not accepting any responsibility.  Is that something in Chinese society that if you hurt somebody and it's your equipment that hurts the person you should accept responsibility, or am I dealing with a

different culture?  In our country if you hurt somebody you should accept responsibility.  Is that the case with China?

*Id.* at 17-18; *see also id.* at 38 ("Q. Does the communist dictatorship own this ship?  I mean, I'm unfamiliar with rights of private ownership in China.").

Through these questions and others, Plaintiff made it clear he intends to make Sino-American relations a central feature of this case and to ask a jury to send a message to China:

> Q. Okay.  Where do you live in China?
> A. Shandong Province.  Shandong.
> Q. And what city?
> A. Yantai City.
> Q. **I'm gonna ask the jury to send a message back to your hometown that if you hurt people with your equipment that you need to take responsibility**.

*Id.* at 20 (emphasis added).

> Q. Have you been in any discussions where you talked to the ship owner and said, look, this guy's hurt, he's hurt badly, you made the gangway, it fell apart, why did this happen?  Why do your gangways fall [a]part and hurt American seamen -- I mean, American ILA workers?

*Id.* at 21-22.

> Q. Well, did you check out why it happened?  Are you that intellectually curious about why your equipment is falling apart and hurting American seamen -- American longshoremen?

*Id.* at 22-23; *see also id.* at 11 ("Q. Okay.  So you take no responsibility for injuring this American longshoreman? . . . Well, we have an American jury tell you whose fault it [is]."); *id.* at 36-37 ("Q. Within that country is the city of Wuhan?  Is that a city within China?").

Opposing counsel also bombarded the deponent with inappropriate questions regarding whether he cared about Plaintiff:

> Q. . . . Now, let's look at Exhibits 12, 13, and 14.  And while we pull those up I wanted to ask you when's the first time you cared about how he was doing?  When did you first make any inquiry about how Mr. Greene was doing?

4

*Id.* at 11-12.

> Q. Between that night and today, have you made any inquiry of anybody about how Mr. Green was doing?

*Id.* at 12.

> Q. Let me go back on it. Have you talked to anybody about Mr. Greene's condition in tire [sic] last six months other than that female police officer that night?

*Id.* at 14.

> Q. When is the last time -- when between the night of the 17th, when you supposedly talked to two police officers about Mr. Greene's condition, and today, have you talked to anybody about his condition? You say you care, I want to put that to the test.

*Id.* at 15. Defense counsel objected to these questions as often as they were asked.

Due in part to the frequent sojourns into objectionable territory in the chief officer's deposition, Li's deposition was considerably shorter. Nevertheless, that did not stop Plaintiff from engaging at least one similarly inappropriate line of inquiry where Plaintiff openly questioned Li's honesty and asked him to comment on the veracity of other witnesses:

> Q. I'm not talking about -- what happened when you first realized -- you're standing at the area at the top of the stairs -- that this man had fallen down into -- to the area of the river? What did you do?
> A. I immediately came off the gangway and then checked on him to see if he was okay and also asked him if he needed any help.
> Q. I don't believe that's true, what you just testified to under oath. Do you understand that you're testifying under penalty of perjury?
> A. I understand, and I guarantee you I'm telling you the truth.
> Q. Well, if a number of longshoremen, such as Mr. Greene and Mr. Glover, will testify that you – you never came to help him at all. Are you telling us that they're not telling the truth; that they're –
> MR. PEDIGO: Object to form.
> THE WITNESS: I definitely was because I, indeed, came off the gangway to help him.
> BY MR. SAVAGE:
> Q. Yeah, okay. Well, we'll -- we'll see who the jury believes. . . .

Deposition of Li Jinzhao (Exh. E) at 11.

On August 10, 2020, Defendants submitted their letter brief to the judge on the parties' discovery dispute in this case. Included in the letter is a discussion not only of the impropriety of deposing witnesses with no personal knowledge but also of the objectionable and abusive nature of Plaintiff's deposition questioning. After submitting the letter, Plaintiff's counsel sent Defense counsel correspondence confirming that the abuse would remain a core component of this lawsuit. *See* August 10, 2020 Email from Lezlie Hatcher to Jason Pedigo (Exh. F) (forwarding article on sanctions levied by China on US officials); August 11, 2020 Email from Lezlie Hatcher to Jason Pedigo (Exh. G) (forwarding quotes from President Trump regarding alleged Chinese misconduct). Indeed, Plaintiff has since submitted briefs referring to Defendants as the "Chinese Defendants" (Doc. 24) and "the Chinese" (Doc. 25 at ¶ 9).

The Plaintiff has now filed a motion to compel the depositions of the five remaining individuals. Of those men, three are no longer officers onboard the ship and are not employed by the Defendants.

II.     CERTIFICATION OF GOOD FAITH EFFORT

Pursuant to Local Rule 26.5, undersigned counsel certifies that a good faith effort to confer and resolve these disputes was made prior to the filing of this motion. As discussed above, the parties discussed these issues by email and phone calls prior to the depositions of Defendants' crew. Additionally, defense counsel objected numerous times to improper lines of inquiry at the depositions, which Plaintiff's counsel has since suggested through communications with Defendants' counsel will persist. Finally, the parties participated in an informal discovery conference on these issues with Magistrate Judge Ray prior to the filing of this motion, and Defendants obtained permission to file. Accordingly, the motion is procedurally proper and timely, and the issues presented herein are ripe for Court review.

III.     ANALYSIS

The scope of discovery available to parties is well known.

> Parties may obtain discovery regarding any nonprivileged matter **that is relevant to any party's claim or defense and proportional to the needs of the case**, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

FED. R. CIV. P. 26(b)(1). Likewise well-known is the ability of the court "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). "The party seeking a protective order bears the burden of establishing good cause and a specific need for protection." *Adigun v. Express Scripts, Inc.*, No. 2:16-cv-39, 2017 U.S. Dist. LEXIS 34619, at *7 (S.D. Ga. Mar. 10, 2017)  (quotation omitted).

> Under the Federal Rules of Civil Procedure,
>
> the party seeking a corporate deposition may identify a specific officer, director, or managing agent to be deposed and notice that individual under Federal Rule of Civil Procedure 30(b)(1). **A corporate employee who does not qualify as an officer, director, or managing agent is not subject to deposition by notice.** Rather, the employee is treated as any other non-party — meaning before being compelled to testify, he or she must be served with a subpoena pursuant to Federal Rule of Civil Procedure 45.

*Ctr. for Individual Rights v. Chevaldina*, No. 16-20905-Civ-KING/TORRES, 2018 U.S. Dist. LEXIS 89847, at *57 (S.D. Fla. May 30, 2018) (emphasis added). As discussed in more detail below, these principles apply to a vessel's crew and officers.

With respect to protective orders seeking to stop or limit depositions, "[w]hen evaluating whether good cause exists, a court should balance the non-moving party's interest in obtaining discovery and preparing for trial against the moving party's proffer of harm that would result from the deposition." *Adigun*, 2017 U.S. Dist. LEXIS 34619, at *3  (quotation omitted).  "When

7

the relief sought in a motion for a protective order is preclusion of a deposition altogether, the burden on the moving party is heavy.*" Liberty Mut. Fire Ins. Co. v. S.-Owners Ins. Co.*, No. 18-81018-cv-MIDDLEBROOKS, 2019 U.S. Dist. LEXIS 82411, at *4 (S.D. Fla. Jan. 9, 2019). Numerous courts, however, have found this burden satisfied under the circumstances presented in this case.

Defendants here seek two general types of relief via protective order. First, Defendants seek an order preventing the five noticed but currently untaken depositions of the vessel's crewmembers from going forward. Second, Defendants seek an order preventing Plaintiff's counsel from asking future deponents in this case insulting, abusive, and irrelevant questions, some of which have been forbidden explicitly by this Court, even coming from this same counsel. Defendants address each form of requested relief in turn.

**A. The five noticed but untaken depositions should not go forward.**

Defendants first move the court to prevent the depositions of Captain Zhu Qiuwen, Second Officer Li Guowei, Second Officer Kai Gao, Third Officer Ni Changfei, and Chief Engineer Wang Yongliang from going forward. These depositions are improper for several reasons.

As an initial matter, Zhu Qiuwen, Kai Gao, and Wang Yongliang are no longer with and employed as officers of the ship. In fact, they are not currently employed by Defendants.[2] *See*

---

[2] These individuals may be employed by an affiliate entity not a party in this suit, but that employment would not require the Defendants to make them available. Fed. R. Civ. P. 30(b)(6) plainly requires Defendants to produce only those **currently** employed as "officers, directors, or managing agents." "A corporate party may not be examined by its directors or any of its former officers; nor by a managing agent who is no longer in the employ of the corporation; nor by subordinate employees." *Fay v. United States*, 22 F.R.D. 28, 32 (E.D.N.Y. 1958) (citations omitted). To determine that Rule 30(b)(6) would require Defendants to produce individuals employed by affiliates or sister corporations both flaunts the plain language of the rule and improperly ignores the corporate form. *See Reed Paper Co. v. Proctor & Gamble Distrib. Co.*,

Declaration of Cai Jinhua (Exh. H).  Thus, Defendants clearly cannot be compelled to produce these witnesses for a deposition.  *See Duncan v. United States*, 16 F.R.D. 568, 569 (S.D.N.Y. 1954) ("If the Captain is not in the employ of the respondent as a managing agent at the time of taking the deposition of the respondent, the respondent is not required to produce him.").

An additional precondition to taking these depositions that Plaintiff fails to satisfy concerns the junior officer status of the proposed deponents.  Excluding the chief officer whose deposition has been taken, Plaintiff has noticed the depositions four junior officers of the vessel.  **Plaintiff, however, has the burden of proving his entitlement to the depositions of the junior officers to the extent he has noticed, not subpoenaed, them.**  As discussed above, "[e]xcept where the employee has been designated by the corporation under Rule 30(b)(6), **or is an officer, director, or managing agent**, an employee is treated in the same way as any other witness, and his or her presence must be obtained by subpoena rather than notice." *Wade v. Westinghouse Lighting Corp.*, No. 1:11-CV-483, 2013 U.S. Dist. LEXIS 195270, at *8 (E.D. Tex. June 3, 2013) (emphasis added).  Courts apply this principle to vessel crewmembers as well.  "[C]rew members do not qualify as officers or managing agents of [the corporate shipowner], and . . . as mere employees they need not be produced by it for examination."

---

144 F.R.D. 2, 4 n.2 (D. Me. 1992).  There is no support in Rule 30(b)(6) for any sort of a "control test."  *See Ethypharm SA France v. Abbott Labs.*, 271 F.R.D. 82, 90 (D. Del. 2010) ("The court agrees with Abbott that there is no textual basis in the federal rules for Ethypharm's argument that the 'control' test is applicable to the court's consideration regarding its request to depose individual witnesses pursuant to Fed. R. Civ. P. 30.").

Plaintiff has made some issue of the fact that Zhu Qiuwen was identified in Defendants' initial disclosures as an "individual likely to have discoverable information that [Defendants] may use to support its claims or defenses" and that could be reached through undersigned counsel.  This was an accurate representation when it was made on May 19, 2020.  Zhu Qiuwen left the employ of COSCO Shipping Camellia Limited on July 1, 2020, when he completed his tour of duty and thus no longer qualifies as a managing agent subject to deposition by notice to Defendants.  Since serving those initial disclosures, Defendants' counsel determined that the chief officer was primarily responsible for cargo operations and thus the witness with pertinent knowledge.

9

*Proseus v. Anchor Line, Ltd.*, 26 F.R.D. 165, 167 (S.D.N.Y. 1960).  Indeed, only vessel masters qualify *per se* as officers or managing agents:

> The legality of this evidence [(the master's admissions)] cannot be questioned, for courts of admiralty have uniformly allowed the declarations of the master, in a case of collision, to be brought against the owner, on the ground that when the transaction occurred, the master represented the owner, and was his agent in navigating the vessel.  **This sort of evidence is confined to the confessions of the master, and cannot be extended to any other person in the employment of the boat, for in no proper sense has the owner [e]ntrusted his authority to any one but the master.**

*Potomac*, 75 U.S. (8 Wall.) 590, 594 (1870) (emphasis added).  Thus, "[s]tatements of the mate cannot bind the vessel's owner.  While the master may make statements binding on the vessel or its owner, the mate may not."  *Naylor v. Isthmian S.S. Co.*, 187 F.2d 538, 540 (2d Cir. 1951); *see also In re Air Crash at Taipei, Taiwan, Case No. MDL 1394 -GAF(RCx) ALL RELATED CASES*, 2001 U.S. Dist. LEXIS 19981, at *17 n.9 (C.D. Cal. Nov. 21, 2001) ("[C]ourts have consistently concluded that a ship's officers subordinate to the captain are not "managing agents."); *Proseus*, 26 F.R.D. at 167 ("The mere fact that the prospective witness was a first officer would not qualify him as a managing agent."); *Duncan*, 16 F.R.D. at 568-69 ("[A] Chief Officer or a Junior Third Officer is not a managing agent.  So much of the notice as seeks to examine the respondent by the Chief Officer and Junior Third Officer is vacated." (citation omitted)).

Courts, however, have developed an exception for some junior officers.  "[T]o depose a party through an officer junior to the master, **the person seeking the examination has the burden** of proving the capacity of the person through whom the party is sought to be examined."  *Santiago v. Am. Exp. Lines, Inc.,* 30 F.R.D. 372, 373 (S.D.N.Y. 1962) (emphasis added).  Specifically, the party seeking the junior officer's deposition must demonstrate that

> (1) the prospective deponent was invested with general powers to exercise his judgment and discretion in dealing either with corporate matters **or with the operations which led to the alleged injury**; (2) the prospective deponent can be

10

> expected to comply with his employer's directive to appear for pre-trial examination; and (3) the prospective deponent can be expected to identify himself with the interests of his employer rather than with the interests of adverse parties'.

*Id.* (emphasis in original). Plaintiff cannot meet this showing here. Defendants produced the officer that was vested with the general powers to exercise his judgment and discretion with the specific vessel operations (here, cargo operations) that allegedly resulted in Plaintiff's injuries. *See* Exh. D at 49-50 (testifying that it was his job as chief officer to manage cargo operations). Plaintiff cannot make the required showing for any of the other four noticed junior officers. Furthermore, as discussed above, two of the four officers are no longer employed with Defendants and thus cannot be shown to qualify under the second or third prongs. Plaintiff's inability to satisfy his burden precludes depositions of these witnesses being taken even before balancing the interests of the parties in these depositions being taken.

Finally, that balance demonstrates that these five depositions cannot go forward. Most importantly to this inquiry, none of the officers sought to be deposed by Plaintiff had personal knowledge of Plaintiff's fall. *See* Exh. E at 15-16 ("Q. Did anybody from the vessel go down and try to help Mr. Greene up other than yourself? A. Everything, the incident happened so quickly, within seconds. **At that time I was the only person there**, so as soon as I came off the gangway, I already saw Mr. Greene. Mr. Greene's body was already on the dock. So -- and then -- and -- and I noti -- after I notified other people in the vessel, somebody else also came down the gangway." (emphasis added)); Declaration of Li Guowei (Exh. I); Declaration of Ni Changefei (Exh. J). Additionally, Defendants have already produced the witness with responsibility for cargo operations for the vessel. *See* Exh. D at 49-50. Defendants do not intend to introduce these other officers' testimony at trial; indeed, at least as to the junior officers, they would not be able to testify about what happened during cargo operations the night of the plaintiff's injuries.

*See* FED. R. EVID. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Good cause thus exists for forbidding these other depositions. *See Paylan v. Teitelbaum*, No. 1:15-cv-159-MW-GRJ, 2017 U.S. Dist. LEXIS 226909, at *2 (N.D. Fla. June 7, 2017) ("Defendant has shown good cause for a protective order regarding the deposition of Dr. Bussing. Dr. Bussing has no personal knowledge of the events alleged in Plaintiff's complaint, and the other information Plaintiff seeks from Dr. Bussing is not relevant to Plaintiff's remaining claims against Dr. Teitelbaum."); *EEOC v. Doherty Grp., Inc.*, No. 14-cv-81184, 2017 U.S. Dist. LEXIS 34787, at *13-14 (S.D. Fla. Feb. 28, 2017) ("The personal deposition of Mr. Weisberg would appear to amount to nothing more than harassment and an improper fishing expedition. Defendant has not demonstrated that the deposition of Mr. Weisberg is the only practical means available of obtaining the information as Defendant could have asked any relevant questions at Mr. Weisberg's 30(b)(6) deposition. Additionally, Defendant has not established that the information sought is relevant, that Defendant's need outweighs the dangers of deposing Mr. Weisberg in his individual capacity . . . . Plaintiff's Motion shall be granted so as to preclude the Defendant from taking the deposition of Mr. Weisberg in his individual capacity."); *Jiminez-Carillo v. Autopart Int'l, Inc.*, 285 F.R.D. 668, 670 (S.D. Fla. 2012) ("On balance, the record supports Defendants' position that these depositions should not be necessary. Given the declarations attesting that these officers (who are responsible for risk assessment duties and not operational duties relevant to this particular case) have no relevant personal knowledge and will not be called as witnesses for the Defendants at trial, the Court will rely on such representations and preclude the depositions from taking place.").

Defendants also have an interest in protecting themselves and their witnesses from the abusive conduct exhibited by Plaintiff in the depositions that have already been taken. In the excerpts quoted above, Plaintiff's counsel asked questions designed to harass Defendants' witness on improper bases, such as his national culture and alleged lack of empathy for Plaintiff. Counsel's questions and subsequent communications reveal a deliberate strategy to exploit current affairs to make China an issue in this case. As explained in more detail below, this conduct was improper. "[N]ame-calling and intentionally disrespecting someone in order 'to get an edge,'" making an issue of Chinese culture, questioning a deponent's religious beliefs, and accusing the witness of not caring about the Plaintiff certainly qualify as inappropriate behavior. *Huggins v. Coatesville Area Sch. Dist.*, No. 07-4917, 2009 U.S. Dist. LEXIS 84971, at *14 (E.D. Pa. Sep. 16, 2009). It suffices here to say that Defendants have a significant interest in discontinuing this abuse.

Adding to the assessment on Defendants' side of the scale is the expense and burden of producing these witnesses. As to the two officers still with the ship, depositions remove them from their duties aboard the vessel, which particularly creates issues when (such as here during the vessel's last call on Savannah) the vessel may be berthed for only twenty four hours for cargo operations. Even if Defendants had control over the witnesses no longer with the vessel (they do not as explained above), producing them from China for depositions would entail the expense of deposition preparation, potentially a translator, and the time necessary to make them available. Plaintiffs simply cannot make a showing sufficient to establish that the balance of interests supports Defendants bearing the expense of making witnesses on the vessel or in China with a lack of any relevant knowledge available for depositions, particularly given that Defendants have produced the two witnesses with pertinent knowledge still in its employ. *See Wade v.*

13

*Westinghouse Lighting Corp.*, No. 1:11-CV-483, 2013 U.S. Dist. LEXIS 195270, at *15 (E.D. Tex. June 3, 2013) (granting protective order with respect to noticed depositions of employees in other countries and determining that "[a]llowing the deposition of two more foreign witnesses, especially when the Court does not find their testimony to be crucial, will only further delay the proceeding on this Court's docket as the parties await visas, make international travel arrangements and secure a translator for those witnesses. This potential delay only adds to the factors which outweigh any potential benefit in Li and Chen's testimony."). The interests of Defendants in preventing these depositions from going forward are consequently significant.

Plaintiff, however, has no substantial interest in taking these depositions, which would offer the Plaintiff no additional information and would not assist Plaintiff in preparing for trial. It is not enough for Plaintiff to assert without evidence that these officers might have some information regarding the proper manner of installing a gangway (despite it not being their responsibility on the day of the incident), particularly where Plaintiff has already had the opportunity to depose the two members of the vessel's crew most qualified to testify to this subject by virtue of their authority (the chief officer) and their involvement (AB Li). At best, Plaintiff seeks duplicative testimony in a fishing expedition designed to hopefully elicit contradictory testimony from a witness without authority to testify on the particular topic. Under this logic, Plaintiff could depose anyone who was a crew member of the vessel at any time, regardless of whether they were even aboard the vessel at the time of Plaintiff's injury. The Federal Rules of Civil Procedure do not contemplate discovery of the scope Plaintiff is intending. *See Garrett v. Univ. of S. Fla. Bd. of Trs.*, No. 8:17-cv-2874-T-23AAS, 2018 U.S. Dist. LEXIS 143193, at *8 (M.D. Fla. Aug. 23, 2018) (discussing the apex deposition rule).

Fundamental issues of witness control, the inferior authority of some of the witnesses, and evaluation of the parties' competing interests in these depositions all militate against these depositions going forward. Accordingly, the Court should grant Defendants' first requested relief.

**B. The Court should issue an order restraining opposing counsel from abusing witnesses and engaging in irrelevant, improper, and prejudicial inquiries.**

Defendants' second request is that the following restrictions be placed on Plaintiff's at any further deposition in this matter, all of which arise out of questions Plaintiff has already asked of Defendants' witnesses:

1. Plaintiff's counsel should be prevented from impugning Chinese culture or suggesting that it is to blame for any allegedly negligent or otherwise improper acts in this matter.

2. Plaintiff's counsel should be prevented from asking questions or making commentary suggesting that witnesses' alleged failure to do things the way Americans typically do them (as characterized by Plaintiff's counsel) constitutes improper or negligent behavior.

3. Plaintiff's counsel should be prevented from asking questions drawing distinctions between American and Chinese culture with the implication that Chinese culture or methods are inferior.

4. Plaintiff's counsel should be prevented from asking questions or giving narrative "about what is fair to [Plaintiff], much less what a wonderful person (family man, etc.) he is" or suggesting that deponents or Defendants do not "care"

about Plaintiff.  *Horton v. Maersk Line, Ltd.*, 294 F.R.D. 690, 699 (S.D. Ga. 2013).

5. Plaintiff's counsel should be prevented from asking witnesses about the god to which they swore prior to beginning the deposition in earnest or their religious beliefs.  *See* FED. R. EVID. 610 ("Evidence of a witness's religious beliefs or opinions is not admissible to attack or support the witness's credibility.").

6. The Court should order that future witnesses in this matter "shall otherwise be shown respect."  *Horton*, 294 F.R.D. at 699.  Questioning should be free of insults and comments about witnesses' cultural background, their alleged lack of understanding of American concepts or standards of care, their alleged lack of empathy, or any other aspects of their lives.

Defendants here emphasize that they are not seeking sanctions; they are simply asking for restrictions and prohibitions on certain conduct that will continue unless abated by the Court. Defendants ask the Court to require that Plaintiff's counsel "play by the rules of discovery." *Horton*, 294 F.R.D. at 696 (ordering such relief in another maritime case involving similar conduct from Plaintiff's counsel).

"[N]o one involved in litigation, such as deposition witnesses and particularly lawyers, should be subject to avoidable insult, indignities, or possibility of physical harm." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 941 F. Supp. 2d 513, 519 (D.N.J. 2005).  "The deposition room is no place for speeches, insults or arguments." *Blumenthal v. Drudge*, 186 F.R.D. 236, 241 n.5 (D.D.C. 1999).

In this vein, the Federal Rules of Civil Procedure clearly prohibit abusive conduct at depositions. *See* FED. R. CIV. P. 30(d)(2) ("The court may impose an appropriate sanction—

including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent."); FED. R. CIV. P. 30(d)(3)(A) ("At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party."). More specifically, this district's local rules explicitly demand that "[w]itnesses shall be treated with fairness and consideration; they shall not be shouted at, ridiculed, or otherwise abused." S.D. GA. L.R. 83.15.

And "[c]ourts, for that matter, routinely rein in those who cross the line." *Horton v. Maersk Line, Ltd.*, 294 F.R.D. 690, 698 (S.D. Ga. 2013).

> As Judge Easterbrook has noted, district courts should use their authority to maintain standards of civility and professionalism. It is precisely when animosity runs high that playing by the rules is vital. Rules of legal procedure are designed to defuse, or at least channel into set forms, the heated feelings that accompany much litigation. Because depositions take place in law offices rather than courtrooms, adherence to professional standards is vital, for the judge has no direct means of control.

*Id.* at 698 (quotation omitted). "Courts do so because conduct that is not permissible in the courtroom during the questioning of a witness is ordinarily not permissible at a deposition." *Id.* (quotation omitted).

At numerous points throughout the chief officer's deposition, Plaintiff's counsel "was not using the deposition for its proper purpose of establishing testimony under oath by a party to the litigation. He was not using it to gather facts to move forward in the discovery process." *Purser v. Trauner, Cohen & Thomas, L.L.P.*, No. 1:07-CV-0395-JOF, 2007 U.S. Dist. LEXIS 95130, at *19 (N.D. Ga. Dec. 14, 2007). Instead, the excerpts above manifest an intent to inject irrelevant and unnecessary cultural commentary and questions about whether the Defendants truly "care" about the Plaintiff, with the intent of accruing an unfair advantage. "[W]hile [Plaintiff's counsel]

17

may strike hard blows, he is not at liberty to strike foul ones." *Horton*, 294 F.R.D. at 698 (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)).  By engaging in attacks on witnesses' cultural background, religion, and integrity, Plaintiff's counsel's actions have crossed that line. *See Freeman v. Schointuck*, 192 F.R.D. 187, 188-89 (D. Md. 2000)  (finding taunting opposing counsel about his case, "accusing the deponent of 'playing games', demeaning the professional competence of the deponent, suggesting that the deponent had cognitive difficulties, referring to the deponent as 'a piece of work', and implying that the deponent was dishonest. . . baiting the deponent by saying she was going to 'get three strikes' and be 'out', taunting the deponent about the fact that the plaintiff was paying his fee as a sanction for her past deposition responses, accusing the deponent of having a hearing problem, peremptorily telling the deponent and Plaintiff's counsel that 'I'm running this deposition', and 'I'm asking the questions', and accusing the deponent of playing 'semantic games'" to be sanctionable conduct and giving specific examples of improprieties)

Good cause is established not only in the fact that this conduct has already occurred; but also that it will certainly continue without Court intervention.  Both the email correspondence attached to this motion (*see* Exhs. F; G) and Plaintiff's counsel's history confirm this, *see, e.g.*, *Horton*, 294 F.R.D. at 699 (setting forth restrictions similar to those requested by Defendant here and identifying those issued in another case involving Plaintiff's counsel).

Plaintiff's counsel cannot be permitted to continue questioning witnesses in this manner, which is prohibited by both our rules of practice and those of professionalism.  He has clearly signaled his intent to continue absent a Court order preventing this abuse.  Accordingly, Defendants ask for that order now before more witnesses become subject to the same conduct.

CONCLUSION

Good cause for the Court to issue orders preventing these five depositions from going forward and curtailing Plaintiff's discovery conduct is apparent. Defendants' motion should be granted.

This 21st day of August, 2020.

                                        ELLIS, PAINTER, RATTERREE & ADAMS LLP

                                        */s/ Philip Thompson*
                                        Jason C. Pedigo
                                        Georgia Bar No. 140989
                                        jpedigo@epra-law.com
                                        Tracy O'Connell
                                        Georgia Bar No. 553460
                                        toconnell@epra-law.com
                                        Philip M. Thompson
                                        Georgia Bar No. 963572
                                        pthompson@epra-law.com
                                        Attorney for Defendants

P.O. Box 9946
Savannah, GA 31412
T: (912)233-9700

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a true and correct copy of the within and foregoing document on all parties in accordance with the directives from the Court Notice of Electronic Filing ("NEF") which was generated as a result of electronic filing.

This 21st day of August, 2020.

                        ELLIS, PAINTER, RATTERREE & ADAMS LLP

                        */s/ Philip Thompson*
                        Jason C. Pedigo
                        Georgia Bar No. 140989
                        jpedigo@epra-law.com
                        Tracy O'Connell
                        Georgia Bar No. 553460
                        toconnell@epra-law.com
                        Philip M. Thompson
                        Georgia Bar No. 963572
                        pthompson@epra-law.com
                        Attorney for Defendants

P.O. Box 9946
Savannah, GA 31412
T: (912) 233-9700