**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | | |
|---|---|---|
| ROMARE J. GREENE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION NO: 4:20-cv-091 |
| COSCO SHIPPING LINES CO. LTD., | ) | |
| COSCO SHIPPING CAMELLIA LTD., | ) | |
| AND SHANGHAI OCEAN | ) | |
| SHIPPING CO. LTD., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

COMES NOW ROMARE GREENE ("Plaintiff"), by and through his

undersigned counsel of record, and files this his Response to the Motion of the

Defendant for Protective Order, showing as follows:

In this Motion, the Defendants ask that they not be required to produce five

witnesses for depositions:

On July 7, 2020, the Plaintiff requested the depositions of six individuals,

each of whom was identified in Defendant's Rule 26(a)(1) Disclosures[1] as

individuals with knowledge. (Exhibit 2).[2]  These individuals are:

---

[1]  The Defendants' disclosures are attached as Exhibit 1.

[2]  The letter attached as Exhibit 2 bears the date of "June 6, 2020."  This date
is in error, as the letter should have displayed the date of July 6, 2020.  The
Plaintiff has included the attached the transmittal email, showing that the letter
was sent on July 7, 2020, as part of the exhibit.

Captain Zhu Qiuwen

Chief Officer Liu Jinlong

Second Officer Li Guowei

Second Officer Kai Gao

Third Officer Ni Changfei

Chief Officer Wang Yongliang

(Exhibit 2 (letter with deposition notice attached).  Deponents Captain Zhu Qiuwen and Chief Officer Liu Jinlong were identified by name in the disclosure itself.   The remaining witnesses were identified on the crew list, provided by Defendants.[3]

It was the Defendants themselves who offered up members of the M/V COSCO Shipping Camellia crew as having relevant knowledge:

> Though the ship's crew has no knowledge of Mr. Greene's alleged injury, **individual crew members may have knowledge of aspects of the vessel's practices and procedures.  The ship's crew can be reached through Defendant's counsel.**

(Initial Disclosures, Exhibit 2) (emphasis added).  Through making this representation, Defendants acknowledge that the **"vessel's practices and procedures"** are relevant to the issues raised in this litigation.  Defendants further represent that Defense Counsel are the proper channel to reach members of the crew.

---

[3]  Deponents Second Officer Li Guowei, Second Officer Kai Gao, Third Officer Ni Changfei, and Chief Officer Wang Yongliang were listed on the vessel's crew list, produced as part of its Rule 26 report.  (A copy of this crew list is attached hereto as Exhibit 5).

Based on this information - information provided by the Defendants - the Plaintiff sought to depose these six individuals.  The first notice was issued on July 6, 2020.  (Exhibit 2).  In response, Defense Counsel indicated that its preference was to mediate before taking depositions.  (Exhibit 3).  But, Defendants never stated that they would refuse to produce any of the noticed witnesses.

The Defendants had ample opportunity to inform Plaintiff that the bulk of the witnesses identified in its initial disclosures would not be made available, but failed to do so.  In mid-July, the parties discussed the logistics of the depositions. Defendants informed Plaintiff that the vessel would be in the Savannah Port on August 2, 2020, and that the depositions could be scheduled during this port call. (Exhibit 4, p. 1).  The parties discussed the need for an interpreter, the need for "wi-fi" access, and that the vessel would be in port for only 24 hours.  (Exhibit 4, pp. 2, 4, 5-7).  Details were firmed up when Defense Counsel received confirmation that the ship would arrive at 8:00 p.m. on August 2, and would depart at 8:00 p.m. on August 3.  (Exhibit 4, p. 5).  Follow-up emails were exchanged on July 29, and the identity of the six deponents confirmed.  (Exhibit 4, p. 10).  Plaintiff then again noticed the depositions of the six crew members on July 29, 2020.  (Notice, dated July 29, 2020, Doc. 27-3).

Defendants gave no indication whatsoever that they had any issues with the noticed deposition until July 29 - two business days before the scheduled August 3 depositions:

> In Brent's letter, he stated he was noticing additional depositions because he could not discern [who] was responsible for the gangway. We have identified those crewmembers and are making them available.  Why does Brent wish to take the other crewmembers depositions?  They have no knowledge of the incident and will be working while the vessel is in port.  Since the ship is only scheduled to be in port for approximately 24 hours, we wish to minimize the disruption to ship operations.

(Exhibit 4, p. 11).  In response, Plaintiff stated:

> If you would admit liability, we wouldn't have to take the depositions of all the ship's crew we originally noticed.  Otherwise, we're going to have to take all of them since every one of them is going to know something about the proper way to set up the gangways.

> Alternatively, can you find out when the ship is next expected to come to the Port of Savannah?  If it's expected back relatively soon, we may be able to reach an agreement to depose some of the crew the next time around.

(Exhibit 4, p. 12).  At no point during this exchange did Defendants state that a subpoena was required to secure the attendance of the crew members depositions.

The first time the Defendants raised the subpoena issue was in their Motion for Protective Order.  The letter brief to the Magistrate, submitted in connection with the informal discovery conference which took place on August 11, 2020, did not mention the subpoena issues.  It was not until the Defendants actually filed this Motion for Protective Order that they argued that a subpoena was necessary.[4]

---

[4] The "Standard Procedures for Discovery Disputes and Settlement Conferences in Civil Cases" (hereinafter "Standard Procedures") for Magistrate Christopher L. Ray indicate that the letter submissions "shall be submitted to the courtroom deputy via email [] and not filed on the docket."  Standard Procedures, I (a).  For this reason, the Plaintiff has not attached Defendants' August 10, 2020 submission to the Magistrate as an exhibit to this response.

Due to weather, the vessel did not actually call on the Savannah Port until August 5.  At that point, the Defendants presented only two witnesses - Chief Officer Liu Jinlong (one of the individuals identified on the notice) and crew member Li Jinzhao, the individuals Defendants presented as being responsible for the gangway on the night of Mr. Greene's injury.

Defendants refused to present the other five witnesses.  They represented that deponents "Zhu Qiuwen, Kai Gao, and Wang Yongliang are no longer with and employed as officers of the ship" and that they "are not currently employed by Defendants."  (Motion for Protective Order, Doc. 27, p. 8).  Defendants raised this issue on August 3 (at the earliest) almost one month after the issuance of the original deposition notice.

As to deponents Gowei Li and Changfei Ni, Defendants argued that they have no relevant knowledge.  To support this contention, Defendants submitted declarations from both of these witnesses, stating that they did not personally witness Mr. Greene's fall, were not involved in cargo operations on February 17, 2020, and did not install the gangway.  (Changfei Ni Declaration, Exhibit 6; Gowei Li Declaration, Exhibit 7). It bears mentioning that the substantive statements made in these declarations are identical.  Both of these declarations are written in English, with no statement as to whether the witness understands the English language.

Neither one of these witnesses disclaims knowledge of the procedures employed in letting down the gangway or in setting the net.  In fact, Chief Officer

Jinlong testified that second officer Guowei and third officer Changfei had knowledge of the how the orange netting and the gangway are supposed to work, as well as knowledge of the pin holding the gangway railing together.  (Jinlong Depo. at pp. 61-63).

### The need for Depositions.

The Defendants' build their Motion for Protective Order on their self-serving belief that the testimony of the crewmembers is not necessary because they did not actually witness the event.  Defendants seek to control the narrative, and only provide the Plaintiff information the Defendants wish the Plaintiff to receive.  For example, the Defendants seek to prevent crewmembers Li Gowei and Ni Changfei from being deposed, based on the assertion that they did not see the incident. These declarations, undoubtedly drafted by Defense counsel, do not address the experience of either crewmember in lowering the gangway and netting. Identification of the proper procedures in lowering the gangway, especially on the vessel in question, is relevant to establishing whether the Defendants met the standard of care, and to establish what precautions are reasonable under the circumstances.  See  Dawkins v. Jones, 119 Ga. App. 796, 798-99 (1969) (quoting Texas & Pac. R. Co. v. Behymer, 189 U.S. 468, 470) ("What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not.").

By choosing what it will allow its witnesses to say, the Defendants have deprived the Plaintiff of the valuable right of cross examination, the"greatest legal

engine ever invented for the discovery of truth."  <u>California v. Green</u>, 399 U.S. 149,

158 (1970) (quoting 5 Wigmore § 1367).

Finally, the need for the depositions of these witnesses - who were attached

to the vessel at the time of Romare Greene's fall - is underscored by the evidence

obtained thus far.  After the incident, Chief Officer Jinlong Liu made a log book

entry recording the event.  (Liu Depo. at 9).  This entry states:

> On or about 1940 LT, the A/B on duty report a worker fell at the
> end of the gangway.  One foot on the gangway step, one foot in the
> safety net, at the same time, another worker was pulling him.
>
> At the time of the accident, because many workers were
> embarking and disembarking, A/B was registering them.  The duty
> officer was busy at Bay 50, so he did not see the whole process and the
> specific situation.
>
> After Chief Officer did an on-site inspection, and ask about
> detail, we learned another was walking down the gangway when he
> held the hand rail and suddenly the handrail fell and the worker
> apparently slipped and fell.
>
> Later the dock foreman informed the Chief Officer that the
> maybe injured worker had been sent to the hospital for examination,
> the specific degree of injury is unknown.

(Log Book Entry, Ex. 8).

This version of events, which attempts to place blame on another

unidentified worker for causing Greene to fall has no basis.  The only two

eyewitnesses have gone on record saying that the log book is false.  Keith Glover,

Plaintiff's lashing partner who actually witnessed the fall, testified that Mr. Greene

had one foot positioned on gangway landing, and was "about to step over the water

and onto the dock when the left handrail suddenly collapsed."  (Glover Aff., Ex. 9,

para. 5).  Mr. Glover flatly disputes the Log Book statement that one of Plaintiff's feet was on the safety net, with another worker pulling him.  (Id. at para. 14).

The other witness who disputes the Log Book depiction is the Plaintiff himself.  He too denies that he had one foot in a safety net, or that another worker was pulling him when he went off the gangway.  (Greene Affidavit, Ex. 10. para. 7).

This is not business as usual.  To make log book entries which are submitted by the Defendants which are knowingly false is awful.

Other relevant points to be discovered from the ship's crew include and offer: the procedures for investigating and/or documenting incidents where in individual sustains physical injury;[5] why the vessel took no photographs documenting the incident scene near the time of Plaintiff's fall; why the vessel obtained no witness statements;  why the vessel requested a man from its American home office to investigate the incident, Mr. "Sincar",[6] and what this individual learned during his investigation, and whether he spoke with members of the crew in performing this investigation; whether there was a post-incident safety meeting; the procedures governing the inspection of the gangway once lowered; and why the Defendants failed to utilize a platform connecting the bottom of the gangway to the dock.

_____

[5]  If no such procedures exist, then this leads to the conclusion that Defendants know that proper investigation procedures would be harmful, as it would document their negligence.

[6]  Chief Officer Jinlong testified that the "headquarters of my company in North America" was informed of the incident.  Jinlong Depo. at 16-17.

Other questions are raised by the Log Book entry.  The statement is made that the Chief Officer did an onsite inspection, and learned that "another was walking down the gangway."  The individual making this statement is not identified.  It could not have been the A/B who actually maintained control of the gangway was busy and did not see the incident.  <u>See also</u> Jinlong Depo., Doc. 27-4, at p. 31 (seaman on duty that night did not actually witness the fall); and Jinzhao Depo., Doc. 27-5, at 4 (same).  If neither the individual responsible for the gangway, Jinzhao, or the Chief Officer actually witnessed the fall, then who informed the Chief Officer that "another was walking down the gangway when he held the hand rail and suddenly the handrail fell and the worker apparently slipped and fell."

There are none.  The ship had no interaction with the Port Police or injured ILA workers Glover and Greene.  In fact, they never rendered any aid or checked on Romare Greene while he waited for the ambulance.  (Greene Aff, Ex. 10, para. 7).

## <u>ARGUMENT AND CITATION TO AUTHORITY</u>

Defendants now request this Court to enter a protective order, precluding them from being presenting these four witnesses for depositions.  Unfortunately, by raising these issues only two days before the noticed depositions, the Defendants deprived the Plaintiff from seeking alternative means to secure the attendance of these witnesses.

A.    **Defendants are Estopped from Arguing that Subpoenas are Required.**

The Defendants' Motion is brought pursuant to Fed. R. Civ. P. 26, which states in pertinent part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (A) forbidding the disclosure or discovery;

Fed. R. Civ. P. 26(c). The relief Defendants request is that the "five noticed but untaken depositions [] not go forward." (Doc. 27, p. 8).

To obtain this requested relief, the Defendants bear the burden of demonstrating "good cause." The Defendants do not seek to protect allegedly privileged information from disclosure, they simply request a ruling from the Court that they be relieved from the obligation to present the witnesses for deposition. The driving issue, according to Defendants, is whether they can be required to produce the "five noticed but untaken" witnesses because they are not "managing agents."

As a general rule, "a witness who is a party or a party representative need not be subpoenaed for a deposition." Al-Rayes v. Willingham (In re Willingham), 2014 Bankr. LEXIS 3180, at *12 (Bankr. M.D. Fla. July 18, 2014) (citing Moore's Federal Practice § 30.03[2] (2013)). Defendants argue that Ni and Li were simply employees, and therefore a subpoena was required to secure their attendance at the

deposition.  However, the Court need not reach this issue as the Defendants are estopped from raising this argument.

Defendants did not timely inform the Plaintiff that three of the requested deponents were no longer in their employ.[7]  The fact that certain witnesses were no longer in the employ of the Defendants was known at some point prior to the depositions, but this information was not timely transmitted to the Plaintiff.

Thus, through their conduct, the Defendants prevented the Plaintiff from issuing and serving subpoenas on the two witnesses who were on the vessel during its August 5, 2020 call.  No addresses for the witnesses was provided, and the Defendants instructed Plaintiff's counsel to contact the witnesses through them. (Ex. 1, Defendants' Rule 26 Disclosures).  Plaintiff's reliance on these representations was reasonable.[8]

This conduct is relevant to the issue of "good cause."  When evaluating whether the moving party has satisfied his burden of establishing "good cause" for a

_____

[7]  See Fed. R. Civ. P. 26(e), stating that "a party who has made a disclosure under Rule 26(a) must supplement or correct its disclosure [] in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect."  Although the Defendants have now made the error in their initial disclosures known, they did not do so in a reasonable time frame before the scheduled depositions.

[8]  See e.g., McMahon v. Presidential Airways, Inc., No. 6:05-cv-1002-Orl-28JGG, 2006 U.S. Dist. LEXIS 4909, at *3-4 (M.D. Fla. Jan. 18, 2006) ("Although most corporate litigants voluntarily produce subordinate employees, if the corporate party refuses to produce the person, the person must be subpoenaed.")  Reason requires that the Defendants first inform opposing counsel that they refuse to produce the witnesses.

protective order, a court should balance the non-moving party's interest in obtaining discovery and preparing for trial against the alleged harm to be sustained by the moving party.   Farnsworth v. Procter & Gamble Co., 758 F.2d 1545, 1547 (11th Cir. 1985).  In this case, the "harm" alleged by the Defendants is having to produce witnesses it identified in initial disclosures and instructed Plaintiff to contact the witnesses through Defendants' counsel.

Even though discussions regarding the depositions of these witnesses began in June, Defendants chose not to raise any issue regarding its requirement that the witnesses be subpoenaed until August 3, two days before the vessel was coming into port for a twenty-four hour call.   This belated objection, when coupled with Defendants' prior affirmative directive that members of the crew could be contacted through Defense counsel, prejudiced the Plaintiff in his ability to actually serve subpoenas on these witnesses.  Because these witnesses are Chinese citizens, the Plaintiff would need to institute the time consuming process of serving these witnesses under the Hague Convention.[9]  Alternatively, the Plaintiff could have served the witnesses with subpoenas during the vessel's call at the Savannah Port, while they were within the territorial jurisdiction of the Southern District. [10]  By

---

[9]  See https://www.hcch.net/en/states/hcch-members for a list of members of the Hague Convention; see also https://www.hcch.net/en/states/hcch-members/details1/?sid=30, the member page for the People's Republic of China.

[10]  See, e.g., In re Inversiones y Gasolinera Petroleos Valenzuela, S. de R.L., No. 08-20378-M, 2011 U.S. Dist. LEXIS 5201, at *23-24 (S.D. Fla. Jan. 19, 2011) ("tag" jurisdiction, i.e., serving a foreign national with a subpoena while in the

waiting until August 3 to raise this issue, Defense counsel lead the Plaintiff to believe that the witnesses would be presented while the ship was on call.

The same argument holds true for the four witnesses who were identified in Defendants' Rule 26(f) report, but are represented as "no longer attached to the ship," Zhu Quiwen, Kai Gao, and Wang Youngliang.  Through not timely amended its initial disclosures to inform the Plaintiff that these witnesses could no longer be contacted through Defense counsel, and through failing to raise this issue until two days before the noticed depositions, Defendants precluded the Plaintiff from securing this testimony through other means.

In justifying their actions, Defendants argue that it is too burdensome for them to produce the witnesses.  Without supporting testimony, Defendants argue "as to the two officers still with the ship, depositions remove them from their duties aboard the vesell."  (Defendants' Brief, Doc. 27, p. 13).  As to the individuals alleged to be no longer with the vessel, Defendants argue that "producing them from China for depositions would entail the expense of deposition preparation, potentially a translator, and the time necessary to make them available."  Id.  By the same

---

district was "sufficient to subject a potential witness to discovery proceedings."); see also Nissan Fire & Marine Ins. Co. v. Fortress Re, Inc. (In re Order Quashing Deposition Subpoenas), Misc. No. M8-85, 1:02CV00054 (M.D.N.C.), 2002 U.S. Dist. LEXIS 14928, at *7-8 (S.D.N.Y. Aug. 13, 2002) (citing In re Edelman, 295 F.3d 171, 179 (2d Cir. 2002)) ("Given that an individual may be subjected to liability by the exercise of so-called 'tag' jurisdiction far from home without the Due Process Clause being violated, there is no reason why service of a subpoena under Rule 45(b)(2), 'which is simply a discovery mechanism and does not subject a person to liability, requires more.'")

token, the Defendants are arguing that the Plaintiff should be required to bear this expense, ignoring their own actions in leading the Plaintiff to believe that the witnesses would be produced.  Defendants actions justify requiring them to pay for the costs of securing the depositions of these witnesses.

## B.    No "Restraining Order" is Justified.

Defendants next argue that Plaintiff's counsel should be prevented, in the future, from "engaging in irrelevant, improper, and prejudicial inquiries."  They seek no sanctions, just a "prior restraint" on Plaintiff's counsel in further depositions.

The questions were admittedly tough, but a thorough cross examination, and adequate representation of the client, sometimes requires tough questioning. "[Cross examination is generally assumed to be indispensable to revealing the truth" and "even vigorous cross-examination has as its central object the extraction of answers from the witness," Wright and Millers Federal Practice and Procedure § 6164(a).  In other words, cross-examination is as much about confirming facts as discrediting a hostile or adverse witness.

According to the Supreme Court, "[Cross-examination of a witness is a matter of right. Its permissible purposes, among others, are [. . .] that facts may be brought out tending to discredit the witness by showing that his testimony in chief was untrue or biased."  Afford v. U.S., 282 U.S. 687 (1931) (citations omitted).  It is a "mechanism for the resolution of [a] man's disputes," and "the instrument of cross examination is an integral part of that system in order to penetrate all of the

conflicting impulses or obstacles to lay bare the whole truth." <u>Deluges v. Fidelity &
Caves. Co. of New York</u>, 313 F.2d 809, 813-14 (5th Cir. 1963) (noting that the
plaintiff should have been "accorded the right to put [the witness] the rigors of a
sharp, relentless, pressing, [and] vigorous cross examination.").

The United States Supreme Court has readily acknowledged that the line
between zealous advocacy and misconduct is not easily drawn and involves a gray
area to be parsed by courts in each factual situation.  <u>United States v. Young</u>, 470
U.S. 1, 7 (1985) ("The line separating acceptable from improper advocacy is not
easily drawn; there is often a gray zone.")

Based on the lack of a clear and unambiguous standard, each instance must
be judged on its own, in terms of context.  For example, Nevada district court
concluded that even a series of irrelevant questions does not, by itself, constitute
"the annoyance or oppression contemplated by 30(d)(3)." <u>Rivera v. Berg Elec. Corp</u>,
2010 U.S. Dist. LEXIS 87874, at *2 (D. Nev. July 28, 2010).  In another case, two
personal attacks made by an attorney on opposing counsel were held to be
insufficient to warrant sanctions.  <u>Gavrity v. City of N.Y.</u>, 2014 U.S. Dist. LEXIS
132035, at *26 (E.D.N.Y. Sep. 19, 2014) The Central District Court of Illinois
declined ing to impose sanctions where the defense attorney's conduct in taking
frequent breaks and private conferences with the witness did not appear to
"frustrate the purpose of the deposition, which is to get to the factual testimony of
the witness." <u>Sokn. v. Fieldcrest Cmty. Unit Sch. Dist. No. 8</u>, U.S. Dist. LEXIS
6109, at *29-30 (C.D. Ill. Jan. 16, 2014).

In this case, Plaintiff's counsel rigorously questioned the only two witnesses the Defendants would produce.  He sought to explore their against Americans and the United States Judicial System.  He sought to explore whether the Defendants accepted responsibility for the incident (Jinlong Depo., Doc. 27-4, at 17-18, 20, 21-22), which is clearly relevant to whether or not the Defendants admitted either that they breached the standard of care or caused the Plaintiff's  injuries.  Questions regarding Defendants' investigation into the incident are relevant to discovering Defendants' version of the events.  (Id. at 22-23).  Similarly, questions regarding the witness' knowledge of the Plaintiff's injuries, or attempts to discover his condition can lead to discovery as to what how the Defendants' view his injuries, Id. at 11-12, 14.  In other words, the witness may say that his investigation revealed that the Plaintiff was not injured.  The Plaintiff is entitled to full discovery of such a position, especially if the Defendant seeks to diminish Plaintiff's injuries through use of this evidence.

Finally, the Plaintiff should be allowed to inquire as any cultural differences and biases which color the witness' testimony.  The American justice system is just that - an American system.  If the Chinese do not embrace similar principles or subscribe to parallel beliefs to those common to the tort system, this is a valid area of inquiry.

The Defendants' Motion for Protective Order must be DENIED.

Respectfully submitted this 4th day of September, 2020.

                                        SAVAGE DURHAM TURNER
                                          PINCKNEY & SAVAGE


                                        By:    /s/ Brent J. Savage
                                                    Brent J. Savage
                                                      Georgia Bar No. 627450
                                                    *Attorneys for Plaintiff*

Post Office Box 10600
Savannah, GA 31412
(912) 231-1140
*lhatcher@savagelawfirm.net*

## <u>CERTIFICATE OF COUNSEL</u>

I hereby certify that I have this day served a copy of the foregoing

**<u>PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE</u>**

**<u>ORDER</u>** upon all parties to this matter via electronic mail and by using the

CM/ECF system which will send a notice of electronic filing to the following:

Jason C. Pedigo, Esq.
Ellis Painter Ratterree & Adams LLP
P.O. Box 9946
Savannah, GA 31412
jpedigo@epra-law.com

This 4th day of September, 2020.

/s/ Brent J. Savage
Brent J. Savage
Georgia Bar No. 627450
*Attorneys for Plaintiff*

SAVAGE, TURNER, DURHAM,
PINCKNEY & SAVAGE
Post Office Box 10600
Savannah, GA 31412
(912) 231-1140
lhatcher@savagelawfirm.net