UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| ROMARE J. GREEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV420-091 |
| | ) | |
| COSCO SHIPPING LINES | ) | |
| CO. LTD., *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

# ORDER

The Court previously directed the parties to each file a single motion detailing any outstanding discovery disputes. Doc. 45 at 1. They have complied. Defendants filed a Motion for Protective Order, doc. 54, to which Plaintiff responded, doc. 57, and Defendants replied, doc. 60. Plaintiff filed a "Motion Detailing Any Outstanding Discovery Disputes," doc. 55, which contains Plaintiff's Motion for Modification of the Court's Scheduling Order, *id.* at 3-8, and Plaintiff's Motion to Compel Depositions, *id.* at 8-12.[1] Defendants have responded, doc. 56, Plaintiff

---

[1] Plaintiff's consolidated discovery motion also contains a preemptive response to Defendants' Motion for Protective Order. *See* doc. 55 at 13, n. 9.

replied, doc. 61, and Defendants sur-replied, doc. 63. All of these discovery motions are ripe for review.

I. **BACKGROUND**

As this Court has summarized before:

> This case involves injuries Plaintiff suffered while working as a longshoreman on the M/V Cosco Shipping Camellia (the "Vessel") which Defendants own and operate. (Doc. 1, Attach. 1 at 3-5.) Plaintiff alleges that he was exiting the Vessel via a steep gangway when the handrail collapsed, causing him to fall off the gangway and land on the dock adjacent to the gangway. (Id. at 4.) Plaintiff alleges that he sustained serious injuries to his right shoulder as a result of the fall.

Doc. 51 at 1-2. During discovery, three issues arose which the parties are unable to resolve without the Court's involvement. The first issue centers on whether the Plaintiff is permitted to identify two additional experts, or if he is foreclosed from doing so by the expiration of his expert report disclosure deadline. *See* doc. 55 at 3-8. The second issue, raised in both Plaintiff's Motion to Compel and Defendants' Motion for Protective Order, is whether Defendants are obligated to produce for deposition five crewmembers identified by Plaintiff in his deposition notices. *See* doc. 54 at 8-15, doc. 55 at 8-12. And, the final issue, whether Defendants are entitled to an order directing Plaintiff's counsel to refrain from

demeaning lines of questioning during any further depositions in this matter. *See* doc. 54 at 15-19.

## II. ANALYSIS

### A. <u>Plaintiff's Untimely Expert Witness Disclosures</u>

Plaintiff seeks a modification of the Scheduling Order to retroactively extend his deadline to furnish expert witness reports. Doc. 55 at 3.[2] The operative deadline[3] expired on July 6, 2020. Doc. 13 at 1. He provided an expert report from one witness, Richard Galuk, on July 15, 2020. *See* doc. 56 at 10 (citing doc. 29-6 (Expert Witness Report of Richard Galuk, with cover letter dated July 15, 2020)). Although not produced before expiration of the deadline, Defendants have not challenged the timeliness of that report. *Id.* Plaintiff initially sought an extension of his expert report deadline on August 19, 2020 to afford him an opportunity to, perhaps, disclose additional experts and provide their reports. *See generally* doc. 25. On September 1, 2020, without the requested extension, he produced two expert reports from two new

---

[2] As discussed below, Plaintiff has already disclosed expert Richard Galuk and has produced his report.

[3] Several amended scheduling orders have been entered, *see* docs. 53 & 67, but the dispute at issue depends upon a deadline established in the original Scheduling Order.

proposed expert witnesses. Doc. 56 at 12 (citing docs. 29-13 (Expert Witness Report of Patricia Adrienne Fletcher), 29-14 (Expert Witness Report of William R. Williams)).

Plaintiff first argues that he has demonstrated good cause, such that his deadline for providing these two new expert reports should be retroactively extended so that they are considered timely. *See* doc. 55 at 4. A schedule may be modified only for good cause and with the judge's consent. Fed. R. Civ. P. 16(b)(4). Retroactive extensions are prohibited by this Court's Local Rules, absent a showing of good cause. S.D. Ga. L. Civ. R. 26.2 ("Except for good cause shown, no extension of time for discovery shall be granted unless a motion for an extension of time is filed *prior to the expiration of such discovery period.*" (emphasis added)). "This good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (quoting Fed. R. Civ. P. 16 advisory committee's note); *see also Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992) ("If [a] party was not diligent, the [good cause] inquiry should end.").

In an attempt to show good cause, Plaintiff argues that his delay was reasonable, considering the possibility that the parties might participate in an early mediation, potentially "narrowing the issues before undertaking costly discovery." *Id.*  However, from a review of the record, it does not appear that Plaintiff ever agreed to participate in an early mediation—a possibility proposed by the Defendants and dismissed by Plaintiff once on the day after his expert reports were due, s*ee* doc. 25-2 at 3, and again four days later, *see* doc. 29-5 at 2.  Even if Plaintiff's representation that an early mediation was contemplated is correct, that contemplation apparently ended as early as July 7, 2020.  *Id.*  But he did not seek to amend the scheduling order until ***six weeks*** later, on August 19, 2020.  Doc. 25.  Plaintiff cannot use the Defendants' suggestion that this case might be a good candidate for an early mediation as an excuse for his failure to timely disclose his expert reports, or at the very least to seek an extension of his deadline to do so before it passed.

Plaintiff also vaguely refers to the Defendants' requests to postpone vessel depositions and the "practical difficulty pursuing depositions any earlier" as support for the requested finding of good cause.  Doc. 55 at 4-5.  These undeveloped arguments do not indicate why a possible delay in

moving forward with depositions prevented Plaintiff from securing additional expert reports or seeking an extension of time in which he could do so. Plaintiff did not diligently attempt to comply with the Court's deadline for disclosing his expert witness reports and has therefore not demonstrated good cause. *See Sosa*, 133 F.3d at 1418. His motion to retroactively extend his deadline is, therefore, **DENIED, in part**. Doc. 55, in part.

However, that does not end the Court's analysis. Plaintiff also argues, alternatively, that he should not be excluded from relying on his untimely-disclosed experts because "late disclosure is either substantially justified or harmless (or both)." Doc. 55 at 6. Rule 26(a)(2) of the Federal Rules of Civil Procedure requires a party to disclose the identity of any expert witness "retained or specially employed to provide expert testimony," that it may use at trial along with a written report prepared and signed by the proposed expert. See Fed. R. Civ. P. 26(a)(2)(B). These disclosures must be made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). As the Court explained above, Plaintiff did not make his disclosures at the time the Court ordered.

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). " 'The party failing to comply with Rule 26(a) bears the burden of establishing that its non-disclosure was either substantially justified or harmless.'" *Caviness v. Holland*, 2011 WL 13160390, at *2 (S.D. Ga. Mar. 17, 2011) (quoting *Hewitt v. Liberty Mut. Grp., Inc.*, 268 F.R.D. 681, 683 (M.D. Fla. 2010)). "Substantial justification is justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply." *Hewitt*, 268 F.R.D. at 682 (internal quotation marks and citations omitted). "[T]he appropriateness of a party's justification turns [at least in part] upon whether the party knew or should have known that an expert was necessary before the late stages of the discovery period." *Caviness*, 2011 WL 13160390, at *2 (quoting *Morrison v. Mann*, 244 F.R.D. 668, 673 (N.D. Ga. 2007)). As to the issue of harm, "[a] failure to timely make the required disclosures is harmless when there is no

prejudice to the party entitled to the disclosure." *Hewitt*, 268 F.R.D. at 683.

For the same reasons Plaintiff has not shown good cause, he has also not demonstrated that his failure to provide his expert reports by the deadline was substantially justified. The clumsy attempt to use the Defendants' suggestion of mediation to justify the delay in (1) timely disclosing the expert reports, or (2) timely seeking an extension of the deadline for doing so, is simply unconvincing. Additionally, the Plaintiff fails to elucidate why he could not identify the need for additional experts prior to the depositions of crew members. *See* doc. 55 at 3. He generally explains that the "data and information considered by these [late-disclosed] experts includes the testimony of the [crew members]," but does not point to any actual testimony or evidence that the crew members provided that was not already available to him. *Id.* As Defendants credibly argue, Plaintiff had significant evidence available to him prior to the two crewmember depositions. *See* doc. 56 at 11. Plaintiff's delay is "wholly inconsistent with the kind of diligence that would warrant a finding that the late disclosures with respect to [the expert witnesses] were substantially justified." *Caviness*, 2011 WL 13160390 at *4.

Finally, then, comes the prong of the analysis where Plaintiff does present a compelling argument. He contends that there is little or no prejudice to Defendants should the untimely experts be allowed, since the original discovery period was still open at the time of the additional expert disclosures, and the amended scheduling order extended that deadline even further. Doc. 55 at 7. He rightly points out that there is no disruption to a trial or trial schedule, since the extended discovery deadline was over a year after the Defendants received the reports. *Id.*; *see also* doc. 53 (discovery deadline September 24, 2021). Even giving no credence to Plaintiff's ham-fisted "early mediation" argument, he is correct that the late-disclosed experts should not present any surprise to the Defendants, considering this case has not yet been set down for trial, and considering the discovery period continued well after Plaintiff provided the reports.

For their part, Defendants claim that allowing these experts will cause them to "incur significant costs and expenses in taking at least three more expert depositions and investigating whether they should obtain expert testimony of their own to rebut Plaintiff's new experts." Doc. 56 at 18-19. "Most commonly, the harm associated with untimely

expert witness disclosures is the non-disclosing party's inability to adequately prepare its case by deposing the witness during the discovery period." *Morrison*, 244 F.R.D. at 673. The harm to which Defendants point is not attributable to Plaintiff's delay; instead, it is the typical "harm" associated with litigating a case involving expert witnesses. Plaintiff has carried his burden of showing that his delay in providing his additional expert witness reports, while unjustified, is ultimately harmless. *See* Fed. R. Civ. P. 37(c)(1). Therefore, his motion is **GRANTED, in part.** Doc. 55.

As Plaintiff rightly observes, this disposition does not foreclose any argument or specific objections that Defendants may have as to the qualifications of these experts or the scope of their testimony. *See* doc. 55 at 8. The Court is aware that this ruling may require the parties to extend, albeit on narrow grounds, the applicable deadlines. Therefore, the parties are **DIRECTED** to confer and, within **FOURTEEN DAYS** from the date of this Order, submit a joint proposed Amended Scheduling Order containing any extended deadlines necessary for the depositions of Patricia Adrienne Fletcher and William R. Williams, and for the

Defendants to furnish reports for any experts they may require after those depositions.

### B. The Parties' Competing Motions Regarding Crewmembers' Depositions

The next issue involves competing motions by the parties. Plaintiff seeks to compel the depositions of the following crew members from the Vessel: (1) Second Officer Li Guowei, (2) Second Officer Kai Goa, (3) Third Officer Ni Changfei, (4) Chief Engineer Wang Yongliang, and (5) Captain Zhu Qiuwen. Doc. 55 at 9. Defendants seek a protective order preventing the Plaintiff from taking those same depositions. Doc. 54 at 8-9.

This dispute began when Plaintiff noticed the depositions of six crew members to take place on August 6, 2020—the five identified above, plus Chief Officer Liu Jinlong. *See* doc. 54-1 at 1. On July 29, 2021, during an email exchange coordinating a time when the Vessel would be back in Savannah, Defendants made it clear that they would be producing only Chief Officer Liu Jinlong, one of the noticed deponents, along with Mr. Li Jinzhao, who was not one of the noticed deponents, but who was "the crew member responsible for putting the gangway into service." Doc. 54-2 at 3. That same day, Plaintiff provided an Amended Notice to Take Videotaped Depositions of Captain Zhu Qiuwen, Chief

11

Officer Liu Jinlong, Second Officer Li Guowei, Second Officer Kai Gao, Third Officer Ni Changfei, and Chief Engineer Wang Yongliang. Doc. 54-3. As they had forewarned, Defendants produced only Chief Officer Liu Jinlong and crew member Li Jinzhao for depositions. Doc. 57 at 5.

Of the five crew members Plaintiff noticed and Defendants did not produce for deposition, three finished their tours of duty before the depositions took place: Captain Zhu Qiuwen, Second Officer Kai Goa, and Chief Engineer Wang Yongliang. *See* doc. 54 at 9; doc. 54-8 at 2. Defendants have presented sworn testimony that these three individuals were not employed by any defendant at the time of the depositions. *See* doc. 54-8 at 2-3. Plaintiff does not seem to contest that these individuals were no longer employed by Defendants when the depositions were noticed and took place. *See* doc. 57 at 11. Instead, he argues that "Defendants did not timely inform the Plaintiff that they were no longer in their employ." *Id.* Regardless of when Defendants made Plaintiff aware of these individuals' employment status, the unrebutted evidence demonstrates that Defendants exercised no control over these former crew members at the time of the depositions. *See* doc. 54-8. Defendants

12

cannot be compelled to produce them pursuant to Plaintiff's deposition notice.

The remaining two crew members noticed by Plaintiff, Second Officer Liu Guowei and Third Officer Ni Changfei, were apparently on the Vessel during its August 2020 call in Savannah. *See* doc. 57 at 11. The question, then, is whether Defendants can be compelled to produce those two crew members pursuant to Plaintiff's Amended Notice to Take Videotaped Deposition.

The Southern District of Florida has succinctly explained who may be compelled to give deposition testimony pursuant to a notice of deposition:

> Only a party to the litigation may be compelled to give deposition testimony pursuant to a notice of deposition. . . . A corporate employee who does not qualify as an officer, director, or managing agent is not subject to deposition by notice. Rather, the employee is treated as any other non-party—meaning before being compelled to testify, he or she must be served with a subpoena pursuant to Federal Rule of Civil Procedure 45. *See Schindler Elevator Corp. v. Otis Elevator Co.*, 2007 WL 1771509, at *2 (S.D.N.Y June 18, 2007); *EEOC v. Honda of America Mfg., Inc.*, 2007 WL 682088, at *2 (S.D. Ohio Feb. 28, 2007); *McMahon v. Presidential Airways, Inc.*, 2006 WL 5359797, at *1 (M.D. Fla. Jan. 18, 2006); *Cleveland v. Palmby*, 75 F.R.D. 654, 656 (W.D. Okla. 1977); 8A Charles Alan Wright, Arthur R. Miller, &

> Richard L. Marcus, Federal Practice and Procedure: Civil 2d § 2107 (2d ed. 1994).

*Ctr. for Individual Rts. v. Chevaldina*, 2018 WL 2432109, at *20 (S.D. Fla. May 30, 2018) (omission added). That Court went on to make clear that "it is well settled that the party seeking to take the deposition bears the burden of establishing the capacity of the person sought to be examined." *Id.*

Defendants argue that the junior officer crew members do not qualify as officers, directors, or managing agents of Defendants, and are therefore not subject to deposition via notice. *See* doc. 54 at 10. Plaintiff does not respond at all to this argument, instead arguing that Defendants are "estopped" from raising it. He cites to no supporting authority for such a proposition. *See* doc. 57 at 10-11. The authority that Defendants cite is persuasive – the two junior crew members who remained on the Vessel when it called in Savannah in August 2020 were not subject to deposition by notice. *See Proseus v. Anchor Line, Ltd.*, 26 F.R.D. 165, 167 (S.D.N.Y. 1960) ("[T]he crew members do not qualify as officers or managing agents of [the corporate shipowner], and . . . as mere employees they need not be produced by it for examination."); *Duncan v. United States*, 16 F.R.D. 568, 568-569 (S.D.N.Y. 1954) ("[A] Chief Officer or a

Junior Third Officer is not a managing agent. [Cite.] So much of the notice as seeks to examine the respondent by the Chief Officer and Junior Third Officer is vacated.").

Because Plaintiff has not met his burden of establishing that the former crew members or the crew members who remained in Defendants' employ were subject to deposition by notice, his motion to compel is **DENIED**. Doc. 55, in part. Defendants' Motion for Protective Order is, therefore, **GRANTED, in part**. Doc. 54, in part.

### C. Plaintiff's Counsel's Deposition Conduct

The final issue before the Court is whether Defendants are entitled to an Order restricting Plaintiff's counsel's conduct during any further depositions in this matter. *See* doc. 54 at 15-17. Defendants seek six specific restrictions: 1) that Plaintiff's counsel be prevented from impugning Chinese culture or suggesting that it is to blame for any allegedly negligent or otherwise improper acts in this matter; 2) that Plaintiff's counsel be prevented from asking questions or making commentary suggesting that witnesses' alleged failure to do things the way Americans typically do them (as characterized by Plaintiff's counsel) constitutes improper or negligent behavior; 3) that Plaintiff's counsel be

15

prevented from asking questions drawing distinctions between American and Chinese culture with the implication that Chinese culture or methods are inferior; 4) that Plaintiff's counsel be prevented from asking questions or giving narrative about what is fair to Plaintiff, or what a wonderful person or family man he is, or suggesting that deponents or Defendants do not care about Plaintiff; 5) that Plaintiff's counsel be prevented from asking witnesses about the god to which they swore prior to beginning the deposition in earnest or their religious beliefs; and 6) that future witnesses in this matter otherwise be shown respect. *Id.* at 15-16.  Defendants do not seek sanctions against Plaintiff's counsel. *Id.* at 16.

Defendants' motion seeks these rather extraordinary protections because Plaintiff's counsel has demonstrated that he is unable or unwilling to show these common courtesies to witnesses in this case without the intervention of the Court. *See, e.g.,* doc. 54 at 3-6 (quoting from the deposition transcripts of Liu Jinlong, doc. 54-4, and Li Jinzhao, doc. 54-5).  As the transcripts demonstrate, Plaintiff's counsel asked questions of the deponents that were demeaning to Chinese culture and to the deponents' own character and were generally harassing and

threatening. *See id.* In response to objections from Defendants' counsel, Plaintiff's counsel appears to have doubled down, indicating that his lines of questioning were *intended* to demean Chinese culture, and that such an intent was justified, or at least would not subject him to censure, because of the current state of the American political landscape. *See* docs. 54-6, 54-7. In response to Defendants' request for a protective order, Plaintiff concedes that the questions were "admittedly tough," but argues that they were just part of the "vigorous cross-examination" that is "indispensable to revealing the truth." Doc. 57 at 15. Such characterization strains credulity.

The Federal Rules of Civil Procedure protect deponents from abusive questioning by permitting the deponent or a party to move to terminate or limit the deposition "on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppressed the deponent or party." Fed. R. Civ. P. 30(d)(3)(A). The Rules also allow the Court to impose a sanction on "a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). And the Local Rules of this Court mandate that witnesses be treated with fairness and consideration, and that they not be "shouted

at, ridiculed, *or otherwise abused.*" S.D. Ga. L. Civ. R. 83.15 (emphasis added).

Plaintiff's counsel violated, at least, this Court's Local Rule when he asked questions of the deponents that were meant to demean their country of origin and their own moral character. He (again) crossed the line of appropriate cross-examination and "unquestionably frustrated the fair examination of [the deponents] with a barrage of arrogant, irrelevant, accusatory questions and caustic comments." *Horton v. Maersk Line, Ltd.*, 294 F.R.D. 690, 697 (S.D. Ga. 2013) (discussing conduct by Plaintiff's current counsel). Because he "violated ethical and professional norms" in deposing the witnesses, the Defendants "have standing to object to unprofessional deposition questioning of another." *Id.* at 697-98. Therefore, considering the Court has at least contemplated that additional limited depositions—albeit of expert witness—may be necessary in this case, the Court finds that Defendants are entitled to the relief that they seek, and their Motion for Protective Order is **GRANTED, in part**. Doc. 54, in part.

The Court imposes the following restrictions upon Plaintiff's counsel during any future depositions that may occur in this matter:

1) Plaintiff's counsel shall not impugn Chinese culture or suggest that it is to blame for any allegedly negligent or otherwise improper acts in this matter;

2) Plaintiff's counsel shall not ask questions drawing distinctions between American and Chinese cultures with the implication that Chinese culture is inferior;

3) Plaintiff's counsel shall not ask questions or give narrative about what is fair to Plaintiff, or suggest that deponents or Defendants do not care about Plaintiff;

4) Plaintiff's counsel shall not ask witnesses about the god to which they swear, or otherwise question them about religious beliefs; and

5) Plaintiff's counsel shall show any future witnesses in this matter respect during their depositions.

### III. CONCLUSION

Plaintiff's Motion for Modification of the Court's Scheduling Order is **GRANTED, in part** and **DENIED, in part**. Doc. 55. The parties are **DIRECTED** to confer and, within **FOURTEEN DAYS** from the date of this Order, submit a joint proposed Amended Scheduling Order containing any extended deadlines contemplated by this Order.

Plaintiff's Motion to Compel is **DENIED**.  Doc. 55, in part.  Defendants' Motion for Protective Order is **GRANTED**.  Doc. 54.

    **SO ORDERED** this 16th day of December, 2021.

                                            _____
                                            CHRISTOPHER L. RAY
                                            UNITED STATES MAGISTRATE JUDGE
                                            SOUTHERN DISTRICT OF GEORGIA